## 36008. ANDERSON v. THE STATE.

BOWLES, Justice.

The appellant, Lemuel Anderson, was indicted by the Jackson County Grand Jury for the murders of Larry Bullock and Phil Foster. Following a jury trial he was found guilty of each offense and received consecutive sentences of life imprisonment. He appeals the verdict and judgment to this court.

*Statement of Facts*

On the night of July 27, 1976, Bullock and Foster were shot to death while they had stopped on the roadside of Interstate Highway 85 near Jefferson, Jackson County, Georgia. Following an investigation which covered over 20 months appellant was arrested and charged with these murders. Both victims worked for Brown Trucking Company out of Atlanta, and were on their way to report to work when the shooting occurred. The bodies were discovered by a passing motorist who came upon their automobile and saw a body lying on the highway. Upon stopping he also found a second body near the rear of the automobile. Neither of the victims exhibited any signs of life. There were no weapons observed near the victims.

GBI Agent Pat Patterson initially investigated the case and found very few clues. In October, 1977, he received information from an informant which pointed to appellant's involvement. He also received an additional tip naming Pat Davenport, Charles Champion, Miller Sutton, Elaine Carson and appellant as being involved in the murders. Statements were obtained from all parties except appellant.

At trial Miller Sutton and Charles Champion testified for the state saying that on the afternoon of July 27, 1976, they had joined appellant in Winder, Georgia and had driven around the area in appellant's cousin's automobile. Both witnesses testified as to some drinking but stated they did not see appellant drinking. Later the three drove to Elaine Carson's house at Jefferson, Georgia, picked her up and then drove to Pat Davenport's house. She also joined the group. They then decided to drive to Buford, Georgia in order to pick up appellant's girlfriend. Sutton, Champion, Carson and Davenport all testified that while they were driving down the entrance ramp from State Route 129 to I-85, a car behind them began honking its horn and flashing its lights. They testified that the occupants of the car behind continued to blink their lights, sound their horn, and began to yell for appellant to pull over. The car came very close to striking or sideswiping the car in which appellant and the witnesses were riding. Appellant finally pulled his car

over and the other car in which Foster and Bullock were riding pulled close behind appellant's car. At this point the passenger of the following car approached appellant's car and said, "Niggers, what ya'll trying to prove." The individual also said, "I'm the pilot and this is my co-pilot." Shortly after those remarks, appellant's car door opened and the first shot was fired. The witness Sutton testified he had seen no gun prior to that time. Three or four more shots were heard. The witness Carson testified that after the man who approached appellant's car door repeated what was said above, appellant exited the car, some words were exchanged and she then heard a shot. The witness Carson testified that appellant was doing all of the shooting and appellant was the only one who had left the automobile.

When appellant got back in the automobile he told the witness Carson who was crying, "Shut up woman, or you'll get the same thing they got." When Sutton asked appellant why he had shot, the appellant answered, "I had to or they would have done it to us." Champion testified substantially the same and added that he saw nothing in the hands of the individual who approached the car, but stated he could not see his right hand. He also said that the other individual at first held a beer can and also had what appeared to be a pistol in his back pocket. He related that when the individual next to appellant reached in the door, appellant pulled a pistol and fired, causing the man to stagger backwards. Further, after appellant shot the first fellow, he twisted and shot backwards towards the other individual.

Following the shooting, the group, with appellant driving, traveled to Buford, Georgia and stopped at Matthew Bishop's residence. While there appellant used the telephone and Bishop overheard him say that he had shot somebody on the highway. Carson also heard appellant say to Bishop, "I wasted two honkies on the expressway."

A truck driver by the name of Moody testified that on the night of the incident between 11 and 12 p. m. he was travelling south on I-85 when he passed two cars which were parked, one behind the other, on the side of the highway. These cars were in the same location where the

bodies of the victims were eventually found. This witness observed a group of approximately four or five people standing outside the cars and who appeared to be arguing. Moody did not stop but a short time later one of the two cars he had observed earlier, sped by him at approximately 100 miles per hour.

Expert testimony was introduced regarding the autopsies on the victims, both of whom had gunshot wounds to their bodies. Both died from internal bleeding. A ballistics expert testified that he had received and run tests on four .38 caliber bullets with similar markings, and three were identified as coming from a .38 caliber Armenius Tiger Titan pistol. The bullets were those removed from the bodies or found at the scene. The fourth bullet was only a fragment and positive identification of it could not be made. However, it did indicate similar markings to the other bullets. There were no weapons found at the scene. None of the other occupants of appellant's car had any weapons. One victim owned no weapon, and although the other victim had previously owned a pistol it had been missing for some time prior to the date of the homicide.

### Enumerations of Error

(1) Appellant contends, "The weight of the evidence is contrary to the verdict and the law." This court as a reviewing court must not necessarily pass on the weight of the evidence, but on the sufficiency of the evidence to support the verdict. *Harris v. State,* 236 Ga. 766 (225 SE2d 263) (1976); *Ingram v. State,* 204 Ga. 164, 184 (48 SE2d 891) (1948). On appeal of a conviction based on a jury verdict we should examine the evidence in a light most favorable to support that verdict. *Smith v. State,* 245 Ga. 44, 46 (262 SE2d 806) (1980); *Fleming v. State,* 236 Ga. 434 (224 SE2d 15) (1976). We resolve all conflicts in favor of the verdict. *Green v. State,* 242 Ga. 261 (249 SE2d 1) (1978). It is the duty of this court to sustain the verdict if we should find when viewing the evidence in a light most favorable to the verdict that a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Patrick v. State,* 245 Ga. 417 (1980); *Shavers v. State,* 244 Ga. 491 (1) (260 SE2d 491) (1979); *Crenshaw v. State,* 244

Ga. 430 (260 SE2d 344) (1979); Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We have examined the evidence in detail and find it sufficient using the foregoing criteria. The appellant did not testify in his own behalf and did not deny the shooting. However, he relies on the testimony of the state's witnesses and contends that their testimony shows that the shootings were justified under Code Ann. §§ 26-901 and 26-902. Appellant has not illustrated to us the exact basis of his contention with respect to § 26-901, but urges that the evidence in the case would demand an acquittal under the provisions of § 26-902, which reads as follows:

"A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person, or the commission of a forcible felony."

The applicable standard to be applied under this Code section is whether the circumstances of the case are such that they would excite the fears of a reasonable man. *Jackson v. State*, 239 Ga. 40, 41 (4) (235 SE2d 477) (1977). Whether they did or not to the point that he felt it would have been necessary to use deadly force, is a question for the jury. *Moore v. State,* 228 Ga. 662 (187 SE2d 277) (1972). The facts that appellant was the only one riding in that automobile to leave the car, that he fired his weapon multiple times, and killed two individuals a considerable distance apart were sufficient to refute appellant's theory that the evidence demanded a justifiable homicide verdict in his behalf. In addition, the jury was authorized to consider the flight of the appellant in leaving the scene at a high rate of speed as showing his consciousness of guilt. *Hughes v. State,* 239 Ga. 393, 397 (236 SE2d 829) (1977); *Woodruff v. State,* 233 Ga. 840 (213 SE2d 689) (1975).

(2) Appellant contends the trial court erred in failing to charge one of his requests relating to the state's burden of proving beyond a reasonable doubt that

appellant was not justified in killing the deceased. Appellant's request was not included in the record on appeal. An examination of the trial court's charge on justification appears sufficient.

(3) Lastly, appellant contends the trial court erred in denying his motion for removal of the death penalty from the consideration of the jury in that the uncontradicted evidence presented by the state showed none of the statutory aggravating circumstances contained in the state's notice to appellant. Since the death penalty was not imposed in this case with respect to either crime, any issue regarding appellant's motion to the trial court in that regard is now moot.

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 29, 1980 — DECIDED APRIL 9, 1980.

*Harvey & Lewellen, Walter B. Harvey, Leonard C. Lewellen,* for appellant.

*Nat Hancock, District Attorney, Jim G. Madison, Assistant District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.

