## A99A1665. BROWN v. THE STATE.
(528 SE2d 868)

ANDREWS, Presiding Judge.

Tony Allen Brown was tried before a jury on charges of murder, felony murder, aggravated assault, and possession of a firearm during the commission of a crime. He was found not guilty of the charged offenses but guilty of the lesser included offense of voluntary manslaughter. He appeals from the judgment of conviction entered on the guilty verdict.

1. All of the charges arose out of an incident in which Brown shot and killed Dudley Turner. Brown admitted that he shot and killed Turner but claimed that he acted in self-defense. According to a tape of the 911 call made by Brown immediately after the shooting, Brown reported that he and Turner were arguing in Brown's apartment over a video cassette recorder which Brown had asked Turner to pawn for him. Brown said Turner came toward him with his hand in his pocket and jumped on him while he was sitting in a chair. Brown said he thought Turner had a knife in his pocket, so he shot him in self-defense.

In a later statement to police, Brown made no mention that he feared Turner was about to attack him with a knife. In his statement, Brown said that Turner had been drinking alcoholic beverages and

using crack cocaine. He stated that he and Turner were arguing about the VCR and that Turner started getting "wild-eyed" and "crazy" and came at him while he was sitting in a chair, grabbed him, and hovered over him like he was going to hit him. Brown told police that "[Turner] started to grab me and I grabbed for the pistol and I don't even remember cockin' it, I just remember havin' it in my hand and it goin' off." Brown stated that Turner jumped back, hollered, "Why'd you kill me?" and assaulted him again at which point he shot Turner a second time. The State presented evidence that the first shot, which struck Turner in the chest, was the fatal shot and the second shot grazed Turner's head. In explaining his actions to police, Brown stated, "I did what I thought was the right thing to do at the time. Because, I mean, he's a big ol' boy, he works, my understanding, works with his dad in a lumber related company. He's a big strong, I mean, strong fellow." Brown stated that he was disabled and that he was afraid Turner, in his intoxicated condition, was about to severely injure or kill him. Brown did not testify or present any evidence at trial.

> [A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). When a defendant contends that the evidence shows he was justified in using such deadly force, the State has the burden of disproving this defense beyond a reasonable doubt. *Andrews v. State*, 267 Ga. 473, 474 (480 SE2d 29) (1997). Whether or not the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself is a question for the jury. *Anderson v. State*, 245 Ga. 619, 623 (266 SE2d 221) (1980).

The evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that Brown did not justifiably use deadly force to protect himself from Turner's assault. *Thomas v. State*, 184 Ga. App. 131, 132 (361 SE2d 21) (1987); *Young v. State*, 229 Ga. App. 497 (494 SE2d 226) (1997). The evidence was also sufficient to show beyond a reasonable doubt that Brown was guilty of voluntary manslaughter in that he shot and killed Turner out of "a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Brown claims the trial court erred in denying his motion for a continuance of the trial to allow the State Crime Lab to complete

analysis of body fluids taken from Brown and Turner or to allow Brown to obtain an independent analysis of the fluids.

At the time of the shooting, the State took a blood sample from Turner and blood and urine samples from Brown and sent the samples to the State Crime Lab to be analyzed for possible alcohol or drug content. When the case was set for trial, the Crime Lab had not yet analyzed the samples because of delays caused by personnel changes at the lab. The State was ready to try the case without any analysis of the samples, but Brown filed a motion a week prior to trial asking that the trial court continue the case until such time as: (1) the Crime Lab analyzed the samples, or (2) he was allowed funds to obtain an independent analysis of the samples. The trial court denied the motion, and the case was tried without any analysis of the samples. After the trial, the Crime Lab completed analysis of the samples, which showed that at the time of the shooting Turner was under the influence of alcohol and cocaine and that Brown had only traces of prescription medication in his samples.

First, Brown had no right to seek, and the trial court had no authority to order, that the State Crime Lab analyze the samples for his benefit. *Kendrix v. State*, 206 Ga. App. 627, 628 (426 SE2d 251) (1992). It follows that Brown was not entitled to a continuance for this purpose.

Second, even though an indigent defendant, upon timely motion, has a right to funds to hire an expert to examine critical evidence which is subject to varying expert opinion, we find no error in the trial court's denial of the motion for an expert in this case. *Sabel v. State*, 248 Ga. 10, 17 (282 SE2d 61) (1981), overruled on other grounds, *Rower v. State*, 264 Ga. 323 (443 SE2d 839) (1994); *Roseboro v. State*, 258 Ga. 39 (365 SE2d 115) (1988). An indigent criminal defendant's motion for funds to obtain an independent expert should inform the trial court with reasonable precision why the evidence sought to be examined is critical, what type of testimony is needed, what the expert proposes to do regarding the evidence, and the anticipated costs for the expert services. Id. at 40-41; *Thomason v. State*, 268 Ga. 298, 310 (486 SE2d 861) (1997). Because Brown's motion failed to set forth these elements, denial of the motion was not error. It follows that the trial court did not err in denying Brown a continuance for this purpose.

Moreover, the evidence admitted during the trial of the case showed that an analysis of the samples for drug or alcohol content was not critical to Brown's defense. Brown admitted in his statement to police that he had been drinking alcoholic beverages prior to the shooting. In any event, whether or not Brown was voluntarily under the influence of alcohol at the time of the shooting was not a defense. *Haywood v. State*, 256 Ga. 694, 696 (353 SE2d 184) (1987). As to

Turner, the evidence clearly established that he was under the influence of alcohol and cocaine at the time of the shooting. Even assuming this evidence supported Brown's contention that Turner was the aggressor and that Brown acted in self-defense, additional evidence of alcohol and cocaine in Turner's blood sample would have been cumulative.

3. Contrary to Brown's contention, the State did not violate his rights under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) by failing to disclose exculpatory evidence contained in the samples. Even assuming an analysis of the samples would have produced exculpatory evidence, since no analysis of the samples was completed prior to or during the trial, the State did not have possession of any such evidence. *Smith v. State*, 222 Ga. App. 366, 369 (474 SE2d 272) (1996).

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JANUARY 28, 2000.

*Kelley A. Dial*, for appellant.
*T. Joseph Campbell, District Attorney*, for appellee.