A11A0650. DAVIS v. THE STATE.
(711 SE2d 324)

MCFADDEN, Judge.

A jury found Victor Davis guilty of voluntary manslaughter as a lesser included offense of felony murder, aggravated assault, possession of a firearm during the commission of a felony and false imprisonment. The trial court entered judgments of conviction, merged the aggravated assault into the voluntary manslaughter for purposes of sentencing, and denied Davis's motion for new trial. Davis appeals, arguing that the evidence does not support the verdicts, given his claim of self-defense, that trial counsel was ineffective for failing to object to the presence of SWAT team members in the courtroom, and that the trial court should have charged the jury on involuntary manslaughter. We find the evidence sufficient to support the verdicts, that there is no reasonable probability that the presence of the SWAT team members affected the outcome, and that the evidence did not support a charge on involuntary manslaughter. Therefore, we affirm.

1. "On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Punctuation omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

> We neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain [whether] the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.

*Vaughn v. State*, 301 Ga. App. 391 (687 SE2d 651) (2009).

Viewed in favor of the verdicts, the evidence shows that the victim was Marshall Cameron. Cameron's uncle, who lived next door, went to Cameron's house and discovered his body dead on the floor. The uncle heard Cameron's house-mate, Darrell Monford, calling his name and found Monford in a bedroom closet. Monford's hands were restrained behind his back with flex cuffs, and he had been gagged.

Cameron's body was in the doorway of Monford's bedroom. Cameron's bedroom had been ransacked. Based on the trail of blood from that room, the police determined that Cameron had been shot there. Two pillows in Cameron's room were saturated with blood, and one had been shot; a bullet was found in that pillow. Blood was dripping down the bedroom wall, and the wall was marked with bloody hand prints. The bedroom door had a bullet hole in it. Some of the wood residue from the door was found on Cameron's face. Cameron suffered five gunshot wounds. Three of the wounds independently could have caused Cameron's death.

Davis had been tried before, resulting in not guilty verdicts on charges of malice murder and kidnapping. The jury could not reach verdicts on the remaining charges. Davis testified at his first trial, and his testimony was read to the jury at the retrial. Davis admitted shooting Cameron, but claimed that the first shot was accidental and the subsequent shots were self-defense. He knew Cameron and Monford from high school and had been staying with them. The three men were continuously smoking crack cocaine, supplied by Cameron.

According to Davis's testimony, Davis was alone in Cameron's room, sitting on the bed and smoking crack, when Cameron entered the room with a gun. Cameron was angry, saying that Davis was smoking his dope, eating his food, living in his house and talking about Cameron behind his back. Davis believed Cameron was angry because Davis would not sleep with him. Davis moved the crack to tempt Cameron, and as Cameron put the gun down to reach for the drugs, Davis lunged for it. Cameron grabbed Davis's wrist. The men fell, and the gun went off, shooting Cameron in the head. Cameron fell to the floor. Cameron got up, threatening to kill Davis, and Davis retreated, firing more shots. Cameron fell dead in the threshold of the doorway to the other bedroom. Davis was afraid Monford would not allow him to leave, so he pointed the gun at him, restrained him, gagged him and put him in the closet.

Davis contends the evidence was insufficient to support the verdicts of voluntary manslaughter and aggravated assault because it did not disprove his claim of self-defense.

[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). "When a defendant contends that the evidence shows he was justified in using such deadly force, the [s]tate has the burden of disproving this defense beyond a reasonable doubt." *Brown v. State*, 242 Ga. App. 106, 107 (1) (528 SE2d 868) (2000). However, "[w]hether or not the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself is a question for the jury." Id.

Davis testified that the initial shot to Cameron's head was an accident and that he kept shooting because Cameron threatened to kill him. This evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that Davis did not justifiably use deadly force to protect himself — after Cameron already had been shot in the head — from Cameron's assault. See *Linzy v. State*, 277 Ga. App. 673, 674 (627 SE2d 411) (2006); *Brown*, supra at 242 Ga. App. 106-107 (1). Or the jury simply could have disbelieved Davis's claim of self-defense, given the number of gunshots fired. See *Stanley v. State*, 254 Ga. 376 (329 SE2d 500) (1985) (evidence of multiple gunshots authorized jury to reject defendant's claim of self-defense). The evidence was also sufficient to show beyond a reasonable doubt that Davis was guilty of voluntary manslaughter in that he shot and killed Cameron out of "a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Thomas v. State*, 174 Ga. App. 560 (330 SE2d 777) (1985) (upholding conviction for voluntary manslaughter when appellant hit the victim on the back of the head with a vodka bottle after the victim made a homosexual advance to him, causing appellant to fear a sexual assault).

Davis's challenge to the sufficiency of the evidence to support the aggravated assault conviction is moot because the trial court merged that count with the voluntary manslaughter count for purposes of sentencing. *Respres v. State*, 244 Ga. App. 689, 690 (1) (536 SE2d 586) (2000).

2. Davis asserts that trial counsel was ineffective in failing to request a mistrial or curative instructions because of the presence of SWAT team members in the courtroom. In order to prevail on an ineffectiveness claim, a defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Conaway v. State*, 277 Ga. 422, 424 (2) (589

SE2d 108) (2003). "[W]here, as here, the issue is the ineffective assistance of trial counsel in failing to object to [security measures], [Davis] is entitled to relief only if he . . . can show that there is a reasonable probability that the [security measures] affected the outcome of the trial." *Whatley v. Terry*, 284 Ga. 555, 571-572 (V) (D) (668 SE2d 651) (2008). Davis has not shown with reasonable probability that the presence of the SWAT team members in the courtroom affected the outcome of the trial.

3. Davis argues that the trial court erred by refusing to charge the jury on involuntary manslaughter. The trial court charged the jury on both self-defense and accident. A charge on involuntary manslaughter is not generally allowed where the defendant alleges self-defense, as Davis did regarding the shots he fired after the first shot. *Crawford v. State*, 245 Ga. 89 (263 SE2d 131) (1980). Nor, under these facts, did the defense of accident as to the first shot require such a charge. "It is well established that if the victim's death was truly accidental, a charge on involuntary manslaughter in the commission of a lawful act is not warranted as no crime would have occurred." (Citation and punctuation omitted.) *Brown v. State*, 277 Ga. 53, 54 (2) (586 SE2d 323) (2003); see OCGA § 16-5-3 (b). A charge on involuntary manslaughter in the commission of an unlawful act other than a felony was not required, given that the evidence relied upon by Davis established either that the pistol discharged accidentally when Cameron wrestled for its control or that Davis intentionally fired the weapon. *Brown*, supra at 277 Ga. 54-55; see OCGA § 16-5-3 (a).

Davis cites *Vick v. State*, 166 Ga. App. 572 (305 SE2d 17) (1983), for the proposition that the evidence supported a charge on involuntary manslaughter. *Vick* has been overruled. In 1991 this court held that when the trial court charges the jury on self-defense and accident, its refusal to charge on involuntary manslaughter is not error. *Bangs v. State*, 198 Ga. App. 404, 405-406 (2) (401 SE2d 599) (1991). *Bangs* overruled all decisions to the contrary.

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED MAY 11, 2011 —
RECONSIDERATION DENIED JUNE 8, 2011.

*Dell Jackson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.