**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2019**

# In the Court of Appeals of Georgia

A18A1782. TRIPP v. THE STATE.

REESE, Judge.

A jury found Otis Tripp, Jr., ("the Appellant") guilty of aggravated child molestation, sexual battery, aggravated sexual battery, and two counts of child molestation. In the third appearance of this case before this Court, the Appellant appeals the denial of his motion for new trial. Previously, the State appealed the trial court's grant of the Appellant's motion for new trial, which this Court vacated."[1] We remanded for the trial court to address a threshold admissibility issue and then re-evaluate the Appellant's sole remaining ineffective assistance of counsel argument.[2]

---

[1] See *State v. Tripp*, 334 Ga. App. XXVIII (November 17, 2015) (unpublished).

[2] *Tripp*, Case No. A15A1003 at p. 15 (3).

Upon remand, the trial court denied the Appellant's motion for a new trial. The Appellant then filed a new appeal, and this Court remanded for a second time for the trial court to complete the record to include the transcript of the April 26, 2016 motion for new trial hearing. Upon receipt of the transcript, we re-docketed the instant appeal. For the reasons set forth infra, we affirm.

A detailed factual history of this case is found in the opinion in the first appeal, and the doctrine of the law of the case applies.[3] Thus, a brief summary and subsequent pertinent procedural history follow.

In July 2008, B. T.'s stepmother questioned B. T., the 12-year-old daughter of the Appellant, about the stepmother's suspicions concerning the Appellant's interactions with B. T.[4] When B. T.'s stepmother "asked B. T. if [the Appellant] had been touching her, . . . B. T. said yes."[5]

---

[3] See *Langlands v. State*, 282 Ga. 103, 104 (1) (646 SE2d 253) (2007) (Pursuant to the law of the case rule set forth in OCGA § 9-11-60 (h), "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be. The 'law of the case' doctrine is not confined to civil cases, but applies also to rulings made by appellate courts in criminal cases.") (citation and punctuation omitted).

[4] See *Tripp*, Case No. A15A1003 at pp. 2-3.

[5] Id. at p. 3 (punctuation omitted).

That same night, B. T. underwent both a forensic interview and a physical exam by a Sexual Assault Nurse Examiner ("S.A.N.E."), during which B. T. disclosed that the Appellant "would 'F' [her].'"[6] The Appellant "essentially confessed[ ]" during his subsequent interview with law enforcement.[7] "At trial, B. T.'s outcry and [the Appellant's] confession were corroborated by testimony and photographic evidence from the medical examination by the S.A.N.E. nurse, which found significant injuries consistent with penetration, to B. T.'s genitalia."[8] During trial, however, B. T. testified for the defense and "recanted her earlier statements[.]"[9] B. T. testified that she had lied "because she was mad at her father for not letting her see her real mother."[10]

After his conviction, the Appellant filed a motion for new trial, and the trial court granted it based primarily on a finding that he had received ineffective

---

[6] *Tripp*, Case No. A15A1003 at p. 3.

[7] Id.

[8] Id. at p. 4.

[9] Id.

[10] Id.

3

assistance of counsel.[11] The State filed an appeal to this Court.[12] This Court reversed the trial court's ruling on two of the three ineffective assistance of counsel claims, vacated the trial court's order, and remanded the case for a determination as to whether certain evidence was admissible and, if so, whether defense counsel was ineffective based on his failure to present such evidence, and to re-consider its ruling on the general grounds.[13] On remand, the trial court conducted another hearing to address these issues. On August 1, 2016, the trial court entered an order denying the Appellant's motion, and this appeal followed.

> It is well settled that, to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the

---

[11] See *Tripp*, Case No. A15A1003 at p. 4.

[12] See OCGA § 5-7-1 (a) (8) (State's right to appeal from the grant of a defendant's motion for new trial).

[13] See id. at p. 15, n. 5. This Court did not express an opinion as to whether the trial court properly granted a new trial based on general grounds because the trial court's original order was premised on its ruling on the Appellant's ineffective assistance of counsel claims. Specifically, the trial court found that the Appellant was denied the effective assistance of counsel for failing to challenge the State's expert witness and failing to call a witness to counter the testimony of the S.A.N.E. nurse. We reversed both of those conclusions in our previous opinion.

4

outcome of the trial would have been different.[14] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[15]

Both prongs of the *Strickland* test need not be proven if the defendant fails to prove either one.[16] To meet the burden of proving trial counsel's deficient performance and resulting prejudice, "the defendant must present competent evidence, which usually means that the attorney at issue must be called to testify and defend against an

---

[14] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[15] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (additional citations and punctuation omitted).

[16] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) ("Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.") (citing *Strickland*, 466 U. S. at 697).

assertion that his performance had been deficient."[17] "The likelihood of a different result must be substantial, not just conceivable."[18]

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that he received ineffective assistance of counsel when trial counsel "fumbled" his attempt to present third-party perpetrator evidence and failed to object to the use of leg shackles at trial. We disagree.

(a) *Failure to present evidence of an alleged third-party perpetrator.*

In our previous opinion, we instructed the trial court to "determine whether defense counsel was ineffective based only on the failure to present evidence of B. T. in bed with the stepmother's brother," an adult male.[19] At the time of trial, defense

---

[17] *Delevan v. State*, 345 Ga. App. 46, 49-50 (1) (811 SE2d 71) (2018) (footnote omitted); see *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005) (Defendant alleged he received ineffective assistance of counsel, yet did not call his trial counsel to testify at the hearing on motion for new trial. To prevail, defendant was required to "rebut by clear and convincing evidence the strong presumption that his attorney was effective. However, . . . without [counsel's] testimony, it is extremely difficult to overcome this presumption.") (citations and punctuation omitted).

[18] *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation and punctuation omitted).

[19] *Tripp*, Case No., A15A1003 at p. 15 (3) (emphasis omitted).

counsel notified the trial court that he could present two or three witnesses that, within the last year, "B. T. was seen in bed with her stepmother's brother, who had entered a first-offender guilty plea to statutory rape of someone other than B. T."[20] Upon the State's motion to exclude this evidence, the trial court heard argument from both parties and granted the State's motion, stating that it may revisit the issue if a testifying witness "opened the door to the admission of such evidence."[21] The trial court did not alter its ruling because there was no direct evidence presented that linked the actions of the stepmother's brother to B. T.'s injuries.[22]

At the motion for new trial hearing, the Appellant's mother testified that she witnessed the stepmother's brother in bed with B. T. in the weeks prior to the Appellant's arrest.[23] Although defense counsel could not remember why he did not call the Appellant's mother to testify at trial, "[h]e thought she might have been nervous, did not want to testify, or that her testimony may not have been helpful."[24]

---

[20] Id. at p. 13 (3).

[21] Id.

[22] Id. at pp. 13-14 (3).

[23] See *Tripp*, Case No., A15A1003 at p. 14 (3).

[24] Id. at p. 14 (3).

On remand, the trial court held that although it was "unusual" that the Appellant's mother had seen B. T. and the stepmother's brother in bed "twice in the weeks prior to the arrest of [the Appellant], [she] offered no testimony that there was any inappropriate physical contact of a sexual nature between [the stepmother's brother] and [B. T.]." Further, the trial court noted that, although the Appellant's mother informed defense counsel that she saw the two in bed together, she was not called to testify, "[defense counsel] testified some of the family members were worried about testifying at trial and that [the Appellant's mother] had been nervous about testifying."

Also, the trial court stated that "it ha[d] never been presented with any evidence (either before trial, during trial[,] or during any of the post-trial hearings) that [B. T.] ha[d] ever named [the stepmother's brother] or any one other than [the Appellant] as touching her inappropriately or having any physical contact with her of a sexual nature." The trial court ultimately ruled that the Appellant's mother's testimony was inadmissible, finding that evidence that she merely observed the stepmother's brother and B. T. "under the covers of a bed two times, without more, would be legally

8

insufficient [because it] was too speculative and conjectural[.]"[25] The trial court cited to *Kidd v. State*[26] and *Dodd v. State*[27] as authority.

The Appellant argues that the Appellant's mother's testimony was admissible under the "source of the injury" analysis, as set forth in *Tidwell v. State*.[28] This argument is unavailing.

Former OCGA § 24-2-3 (a), the Rape Shield Statute applicable at the time of trial,[29] stated in part,

---

[25] The record shows that upon remand, the trial court issued an order denying the Appellant's motion for new trial on several grounds. Specifically, the Appellant argued, inter alia, that the trial court erred finding that defense counsel's failure to object to the Appellant wearing leg shackles at trial did not amount to ineffective assistance of counsel; and that the trial court erred in denying his motion for a directed verdict for the removal of a juror for misconduct.

[26] 257 Ga. App. 744 (572 SE2d 80) (2002).

[27] 293 Ga. App. 816 (668 SE2d 311) (2008).

[28] 306 Ga. App. 307 (701 SE2d 920) (2010).

[29] The Appellant was tried in September 2009, before Georgia's new Evidence Code took effect in 2013. The current Rape Shield Statute is codified at OCGA § 24-4-412. See *Algren v. State*, 330 Ga. App. 1, 7 (3) (764 SE2d 611) (2014) ("[T]he revision of the Georgia Rape Shield Statute included only minimal changes and left the former version of the statute largely untouched.") (footnote omitted); see also *Davis v. State*, 329 Ga. App. 797, 803 (3) (a), n. 7 (764 SE2d 588) (2014) ("Effective January 1, 2013, the Rape Shield Statute is codified at OCGA § 24-4-412.").

In any prosecution for a violation of . . . Code Section 16-6-4, relating to aggravated child molestation; or Code Section 16-6-22.2, relating to aggravated sexual battery, evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.[30]

In *Tidwell*, following a jury trial, the defendant was convicted of child molestation.[31] He appealed his convictions, arguing, inter alia, that the trial court erred in excluding evidence that the 15-year-old victim had been having sex with her boyfriend, thereby explaining the State's evidence that "the victim's hymen had been penetrated."[32] This Court ruled that the evidence of the changes in the victim's hymen were admissible, under an exception to the former Rape Shield Statute,[33] because the

---

[30] *Turner v. State*, 312 Ga. App. 315, 317-318 (1) (718 SE2d 545) (2011) (citing former OCGA § 24-2-3 (a)) (punctuation omitted).

[31] *Tidwell*, 306 Ga. App. at 307.

[32] Id.

[33] See former OCGA § 24-2-3 (b).

evidence was relevant to an issue other than consent.[34] However, the Supreme Court of Georgia recently held that "cases purporting to allow a relevance exception to the Rape Shield Statute for the admission into evidence of a complaining witness's past sexual behavior beyond that contained in [the Statute] are hereby overruled to the extent that they do so."[35]

It is well settled that, for a criminal defendant to introduce evidence to implicate a third party for a crime for which the defendant is being tried,

> the proffered evidence must raise a reasonable inference of the defendant's innocence and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature. . . . Evidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible.[36]

---

[34] See *Tidwell*, 306 Ga. App. at 312-313 (5).

[35] *White v. State*, __ Ga. __ (2) (__ SE2d __) (Case No. S18G0365 at pp. 13-14 (2)) (February 4, 2019) (citing OCGA § 24-4-412 (b)) (Specifically overruled *Tidwell*, 306 Ga. App. at 307 (5)) (footnote omitted).

[36] *Dodd v. State*, 293 Ga. App. 816, 819 (1) (668 SE2d 311) (2008) (citations and punctuation omitted).

However, in this case, B. T. never identified anyone, other than the Appellant, who had touched her in a sexual nature.[37] Importantly, even if the Appellant's mother testified that she saw B. T. in bed with the stepmother's brother, because she did not witness any sexual activity between the two, her testimony would have been insufficient to show actual sexual abuse by a third party.[38] Instead, the Appellant's mother's testimony was speculative as to the stepmother's brother's interactions with B. T.[39]

---

[37] See *White*, __ Ga. at __ (2), n. 8 (For trials that began before the January 1, 2013 amendment to the Rape Shield Statute, "[t]o the extent that [prior child molestation] cases and their progeny can be read to support the erroneous proposition that evidence of a victim's past sexual behavior could be admissible under the Rape Shield Statute if relevant to an issue other than consent, they are hereby overruled.") (citations omitted).

[38] See *Kidd*, 257 Ga. App. at 745 (2) (b) ("[A] third-party conviction for child molestation is not direct evidence of an alternative explanation for the victim's claims of child molestation[, and it does not] lessen [the defendant's] culpability with regard to [the minor victim's] assertions against him. . . . It is well established that evidence of a prior unrelated molestation generally is not admissible.") (punctuation and footnote omitted).

[39] See *Dodd*, 293 Ga. App. at 819 (1) (Affirmed trial court's exclusion of an alleged third-party perpetrator's criminal convictions sought by defendant to implicate him for the commission of the child molestation crimes for which defendant was being tried.); *Kidd*, 257 Ga. App. at 745 (2) (b) (Defendant failed to establish a foundation for admission of a neighbor's third-party conviction for child molestation against a different victim to show the neighbor's interactions with the minor victim.).

"[A]s a general rule, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel."[40] Defense counsel testified at the motion for new trial hearing that, "[the Appellant's] parents were really nervous about testifying, . . . the impression I think I had, . . . one of them didn't want to testify, they were afraid to testify." Defense counsel further averred that "after the tapes came out [, the Appellant's father] had said some things he probably didn't need to say to his son on the phone[,] I was really leary about using the family members[.]" Defense counsel also testified that the taped jail conversations were "somewhat incriminating." The above testimony shows that defense counsel made a strategic choice not to call the Appellant's parents to testify, reasoning that they were nervous and afraid and he thought that some of the taped jail conversations were unfavorable to the Appellant's defense.

Based on the speculative testimony of the Appellant's mother as to the interactions between B. T. and the stepmother's brother, as well as the trial counsel's strategic decision not to call various family members to testify during trial, we conclude that the Appellant has not shown there is reasonable likelihood that the

---

[40] *Whorton v. State*, 318 Ga. App. 885, 892 (4) (b) (735 SE2d 7) (2012) (punctuation and footnote omitted).

13

outcome of the trial would have been different if trial counsel had offered the testimony of the Appellant's mother.[41]

(b) *Failure to object to the use of leg shackles.*

The Appellant also contends that he received ineffective assistance of counsel because defense counsel did not object to the use of leg shackles during trial. We find no reversible error.

"Where, as here, the issue is the ineffective assistance of trial counsel in failing to object to security measures, [the defendant] is entitled to relief only if he can show that there is a reasonable probability that the security measures affected the outcome of the trial."[42] On remand, the trial court issued a new order denying the Appellant's motion for a new trial, stating in part,

> [t]here were security reasons outlined by the sheriff's department for having [the Appellant] in ankle restraints during the trial. The jury was

---

[41] See *Rouse v. State*, 290 Ga. App. 740, 744-745 (3) (a) (660 SE2d 476) (2008) (Defense counsel's explanation that he did not call the defendant's parents to testify in a multi-count child molestation case because, inter alia, he did not find them to be persuasive witnesses.); see also *Sarratt v. State*, 299 Ga. App. 568, 570 (2) (a) (683 SE2d 10) (2009) ("The determination as to which defense witnesses will be called is a matter of trial strategy and tactics.") (punctuation and footnote omitted).

[42] *Davis v. State*, 309 Ga. App. 831, 834 (2) (711 SE2d 324) (2011) (citation and punctuation omitted).

completely unaware of these security measures. All tables in the courtroom have table to floor opaque drapes. The witness box has an opaque vanity panel. No one seated at any counsel table or on the witness stand can be observed below the mid-chest/torso area. [The Appellant] was never moved in, out[,] or around the courtroom when any jurors were present.

Prior to trial and outside the presence of the jury, the following colloquy ensued:

[COURT]: [The Appellant] is wearing leg restraints.
[APPELLANT]: Yes, sir.
[COURT]: [The Appellant] is wearing leg restraints as we do in all felony trials in this courtroom where a person is brought from the jail for security reasons.
[APPELLANT]: Yes, sir.

When questioned at the motion for new trial hearing about the use of leg shackles, trial counsel testified that he did not

believe [the Appellant] was ever seen by the jury to have leg shackles, so I thought the protection was adequate because . . . there was no way that you were going to see through those curtains. They went all the way to the floor and . . . whatever color material they were, I couldn't see through it. So, I didn't think that my client was being prejudiced by having leg shackles on because of the safeguards that were put in place.

Trial counsel further testified that he did not hear any "loud clanging of any kind that was noticeable" during the five-day trial. Also, trial counsel testified that he spoke to the Appellant at length about whether he wanted to testify, that the Appellant was "intimidated by the idea of testifying[,]" and that "he definitely did not want to testify, there was no doubt about that. It was not because of the leg shackles."

The Appellant has not shown that had he not worn the leg restraints, there was a reasonable probability that the outcome of this trial would have been different.[43] The trial court did not err in denying this claim of error.[44]

2. The Appellant asserts that the trial court erred in denying a mistrial after removing a juror for misconduct. We disagree.

OCGA § 15-12-172 states in part,

> If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. Further replacements shall be made in similar

---

[43] *Schaff v. State*, 275 Ga. App. 642, 643 (2) (a) (621 SE2d 595) (2005) ("Failure to raise a meritless objection cannot constitute ineffective assistance of counsel.") (citations and punctuation omitted).

[44] Id.

numerical sequence provided the alternate jurors have not been discharged. An alternate juror taking the place of any incapacitated juror shall thereafter be deemed to be a member of the jury of 12 and shall have full power to take part in the deliberations of the jury and the finding of the verdict.

Furthermore, a trial court has the discretion to replace a juror:

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, we have also recognized that some irregularities are inconsequential. The decision whether to remove a juror from a panel lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.[45]

Here, the trial court received notification at the end of the third day of trial that a juror had made comments to other jurors concerning the case that suggested the juror had already concluded that the Appellant was guilty. The next day before recommencing the trial, the trial court questioned each juror and the two alternates about the comments, outside of the presence of the other remaining jurors. After the questioning, the trial court removed one juror for making "negative comments[,]" and

---

[45] *Tolbert v. State*, 300 Ga. App. 51, 53 (2) (684 SE2d 120) (2009) (citation and punctuation omitted).

replaced him with an alternate juror. Defense counsel moved for a mistrial, which the trial court denied. After remand by this Court, the trial court issued an order denying the Appellant's motion for new trial on this ground stating, that the trial court had "[received] no questionable responses [from the remaining jurors and had] allowed the trial to continue."

It is undisputed that both parties agreed with the trial court's decision to question each of the jurors individually, under oath, and to allow each of the parties "limited opportunity" to question the jurors. The trial court questioned each juror as to whether he or she had heard the remarks, and whether he or she possessed a preconception of guilt, innocence, or bias toward the Appellant. After identifying the juror who made the remarks at issue, the trial court promptly removed him. The trial court ruled, however, that a mistrial was not required because the juror's comments "[did not] go to the merits of the case, the believability of the witnesses, the weight and credit to give the witnesses, the evidence or anything else."

Based on the foregoing, the trial court did not abuse its discretion in denying the Appellant's motion for mistrial on the basis of juror misconduct.[46]

---

[46] See *Tolbert*, 300 Ga. App. at 54-55 (2).

3. The Appellant asserts that the trial court abused its discretion in denying a new trial on general grounds. We disagree.

It is well settled that,

[e]ven when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is contrary to the principles of justice and equity,[47] or if the verdict is decidedly and strongly against the weight of the evidence.[48] When properly raised in a timely motion, these grounds for a new trial — commonly known as the general grounds — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror."[49]

Further,

[i]n exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless . . . it nevertheless is, generally speaking, a substantial discretion.[50]

---

[47] See OCGA § 5-5-20.

[48] See OCGA § 5-5-21.

[49] *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015) (citation and punctuation omitted).

[50] Id. (citations and punctuation omitted).

Here, the trial court recited that it had

> reviewed the entire record and analyze[d the] general ground issues in
> connection with OCGA § 5-5-20, OCGA § 5-5-21[,] and OCGA § 5-5-
> 25. Additionally, [the judge had] reviewed and weighed the evidence
> and the record sitting as a [13th juror] and ha[d] exercised discretion in
> the review and consideration of whether to grant a new trial on the
> general grounds.

The record shows that the trial court used the appropriate discretionary

standard in considering the Appellant's motion for new trial on the general grounds.[51]

In light of our analysis in Divisions 1 and 2, supra, as well as in our previous decision

in this case, we conclude that the trial court did not abuse its discretion in denying the

Appellant's motion for new trial on the general grounds.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*

---

[51] See generally *State v. Holmes*, 304 Ga. 524, 532 (3) (820 SE2d 26) (2018)
(vacating the grant of the motion for new trial and remanding for the trial court to
consider the defendant's motion on general grounds, applying the "appropriate
discretionary standard[ ]").