## 45308. ROSEBORO v. THE STATE.
(365 SE2d 115)

WELTNER, Justice.

Timothy Roseboro was found guilty of the rape and malice murder of Jacqueline O'Neal, and of the burglary of her apartment. He was sentenced to two life terms and twenty years in prison.[1]

O'Neal's body was discovered in her apartment some thirty-five to fifty hours after her death. Her throat had been cut with a sharp instrument; her skull had been fractured, before death, probably with the butt of a pistol; her clothing had been either rearranged or removed altogether. There were spermatozoa in her vagina.

After the discovery of the body, suspicion centered on Roseboro, who lived in the same apartment complex as the victim. When he was advised of his *Miranda* rights, Roseboro indicated he understood them, and was willing to answer questions without an attorney. He consented to a search of his apartment, which resulted in the discovery of a handgun with human hairs clinging to the butt of the weapon, and of bloody clothing that belonged to him. Roseboro was unable to account for the condition of the clothing, and was unable to account for the presence of his ski cap, found beneath the victim's body.

1. The evidence in this case is such that a rational trier of fact could have found Roseboro guilty beyond a reasonable doubt of the crimes for which he was convicted, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Roseboro complains that the pre-autopsy photographs of the victim's body, which were graphic and which were admitted over objection, were so prejudicial as to outweigh their probative value. There was no error. *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983).

3. Roseboro, who was indigent, contends the trial court committed error when it declined to grant his "motion for funds to hire expert witnesses."

(a) We held in *Jackson v. State*, 249 Ga. 751, 755 (295 SE2d 53) (1982): "The rule in this state is clear. 'The granting or denial of a motion for appointment of expert witnesses lies within the sound discretion of the trial court. Unless there has been an abuse of discretion, the trial court's ruling will be upheld.'"

(b) In *Thornton v. State*, 255 Ga. 434 (339 SE2d 240) (1986), we dealt with some of the elements presented in this appeal: "The state

---

[1] The crimes were committed on February 25, 1987. Roseboro was indicted and then re-indicted on August 4, 1987. He was found guilty and was sentenced on August 20, 1987. The trial transcript was certified by the court reporter on October 21, 1987. This appeal was docketed in this court on December 18, 1987, and was argued on February 10, 1988.

obtained involuntarily from Thornton certain dental impressions, so that his teeth might be compared to marks appearing in an autopsy photograph of the victim.

"Thornton's request [for funds to hire a forensic dental expert of his choosing because of indigency] undoubtedly involves critical evidence,[2] which, in light of its novelty, is likely to be the subject of varying expert opinions. The request was made in a timely pre-trial motion, and Thornton has demonstrated adequately his entitlement to state funds, in a reasonable amount to aid in the preparation of his defense."

There we directed: "The trial court shall appoint an appropriate professional, whose experience, at minimum, is substantially equivalent to that of the state's expert witness, to examine the state's evidence on behalf of Thornton. The trial court shall also approve the payment of reasonable compensation for such services, to be provided from public funds." 255 Ga. at 435.

Holding that an expert must be provided to Thornton at public expense we imposed this limit: "The ruling of this case cannot serve as a basis for wide-ranging demands on behalf of indigent defendants for scientific investigative funds. This case is, assuredly, far from the normal, in that, so far as has been made to appear to us, the evidence we have discussed is the only connecting link between Thornton and the homicide. Further, the record establishes that the possible scientific proof to be offered by the state is highly unusual in nature, as opposed to evidence such as blood samples, ballistics reports, and other routine scientific analyses." 255 Ga. at 435.

(c) Roseboro's motion for funds with which to secure expert scientific witnesses contained an eleven-page report from the state's crime laboratory. The report was signed by two chemists, two serologists, two microanalysts, and one firearms examiner. The motion made the bare assertion that Roseboro's counsel needed an expert witness to assist in preparing properly a defense, and that such an expert was necessary to assure a fair trial. However, it made no effort to demonstrate to the trial court *what* type of expert was needed, nor the qualifications of this expert, nor what tests the expert would perform, nor why the evidence to be examined was critical. Nor did the motion identify any evidence or scientific test that would be subject to varying expert opinion. Furthermore, there was no allegation that personnel of the crime laboratory were either unqualified or biased. Finally, the motion neither identified by name and qualifications a specific expert, nor indicated the amount in fees that any expert

---

[2] For a discussion of the term "critical evidence," see *White v. Maggio*, 556 F2d 1352, 1357 (5th Cir. 1977).

likely would charge.

(d) A motion on behalf of an indigent criminal defendant for funds with which to obtain the services of a scientific expert should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

(e) Because Roseboro's motion contained none of these elements, the trial court's denial of his motion was not error.[3]

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 3, 1988.

*Mark V. Clark, J. Robert Joiner,* for appellant.

*Lewis R. Slaton, District Attorney, R. Andrew Weathers, David Wright, Assistant District Attorneys, Michael J. Bowers, Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.

---

[3] For a similar circumstance and holding, see *Moore v. Kemp,* 809 F2d 702, 717-18 (11th Cir. 1987): "We do note that . . . three days before [Moore's] attorney presented his motion for the appointment of an expert to [the trial court], the prosecutor gave him copies of the reports he had received from the state crime lab and the names of the experts who had authored the reports and would testify for the prosecution. Inexplicably, [Moore's] counsel never informed [the trial court] what those reports disclosed or the areas of expertise of the persons who had made them and, presumably, would testify at trial. Counsel also failed to inform [the trial court] whether he had interviewed the State's experts about any tests they may have performed and, if not, whether they would be amenable to such interviews. A thorough study of the crime lab reports . . . may have eliminated any need for expert assistance. . . .

"[A]fter the [trial] court had heard argument of counsel and ruled on [Moore's] motion, defense counsel did offer the name of an expert who 'was available to be appointed,' but he did not inform the [trial] court of that person's expertise or what he could have contributed to the defense.

"[Moore's] motion, considered in the light of the record before [the trial court] when [it] made [its] dispositive ruling, failed to create a reasonable probability that expert assistance was necessary to the defense and that without such assistance [Moore's] trial would be rendered unfair. We accordingly hold that the trial court did not err in denying [Moore's] motion."