S01A1539. FINN v. THE STATE.
(558 SE2d 717)

FLETCHER, Chief Justice.

A jury convicted Michael S. Finn of burglary and malice murder in the stabbing death of Mary Sue Ogletree.[1] Finn appeals, contending the trial court erred in denying his request for funds for an independent DNA test. Because Finn was not diligent in providing the trial court with the specific information to establish the need for the test, we affirm.

1. The evidence at trial showed that the victim was found dead in her apartment on Forest Avenue the morning of June 8, 1980. She had been stabbed multiple times and her throat slit. Her dress had been pulled up and her underclothes removed. Items in her apartment were strewn about and it appeared that a single nylon stocking was missing. She had last been seen alive the previous evening around 10:15 p.m. when she left her daughter's apartment in the same complex to return to her own apartment.

Finn, using the name Thomas Daniels, first came to the attention of the police on June 13, 1980, when he contacted police and told them he had information about the crime. Finn told police that he had gone to a bar with his roommate Danny Peggin and after Peggin left, he met a man named Brian. Brian and Finn had talked for a while and then left in Brian's truck and smoked marijuana and

---

[1] The crimes occurred on June 7, 1980. A grand jury indicted Finn on September 20, 1994. Following a jury trial on November 11-18, 1996, the trial court sentenced Finn to life imprisonment on the murder charge and a twenty-year consecutive term of imprisonment on the burglary charge. Finn filed a motion for new trial on December 17, 1996, which was denied on May 14, 2001. Finn filed a notice of appeal on May 16, 2001, the case was docketed in this Court on July 17, and submitted for decision without oral argument on September 9, 2001.

snorted cocaine. Later as they were driving back to Brian's apartment to get more marijuana, Brian said that he had killed Ms. Ogletree and described the crime in some detail. Finn told police that once Brian related this story, he (Finn) became scared and jumped out of Brian's truck.

When the police tried to find Thomas Daniels again, they discovered that he had given a false name and address and learned that he had also used the name Robert Peggin. In investigating Robert Peggin, the police spoke with a Phebe Hodges, who knew Finn as Peggin and gave him an alibi for the time of the murder. Hodges's mother also confirmed the alibi.

In 1994, when again questioned by police, Hodges and her mother both told police that they had confirmed Finn's alibi in 1980 because they were afraid of him and what he would do to them and their family and that Hodges last saw Finn at 10:30 on the night of the crime. At trial, Hodges testified that prior to the murder, Finn had asked her where Forest Avenue was located; on the night of the murder, he borrowed a car belonging to Hodges's family; when he returned the car the following day, he said that some friends of his had been involved in a robbery the night before and that he was not involved and he wanted her to provide him with an alibi; during lunch with Hodges's family the family received a phone call informing them that Ms. Ogletree had been murdered and Finn then stated that it was a good thing that he was with the Hodgeses because otherwise they might think he was involved in the murder.

One of Finn's friends testified that she observed a single nylon stocking in his apartment after the murder. Finally, while Finn was being transported back to Columbus in 1994, he told the officer that he had been traveling down the street where the victim lived and "something told him to stop." He went to the victim's apartment, looked in, and saw an old man killing her. Once in Columbus, Finn directed police to the victim's apartment.

After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Finn guilty of the crimes charged.[2]

2. The police found a spot of blood on the victim's shoes. In 1994, the State sought to have the sample tested for DNA. The state crime lab and an independent testing laboratory both concluded that the sample was insufficient for DNA testing and no DNA evidence was presented at trial. In May 1996, Finn made a request for funds for an additional test, which the trial court denied after a hearing. Finn contends the trial court's ruling is reversible error.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

In order to obtain funds to employ a scientific expert, an indigent defendant must disclose "with a reasonable degree of precision" (1) the reason the evidence to be examined is critical; (2) the type of scientific testimony needed; (3) what the expert proposes to do with the evidence; and (4) the projected cost of retaining the expert.[3] Without detailed information, neither the trial court, nor an appellate court, can determine whether the funds are necessary to protect the defendant's due process rights. In the present case, Finn failed to provide sufficient information to justify his request. In requesting a third test, Finn did not identify the expert he proposed to use, how that expert would examine the evidence, whether Finn's examination would differ in any material aspects from the State's expert and the independent expert, or the cost of the expert. Because Finn failed to provide specific information necessary for the trial court to fully consider his request, the trial court did not err in denying the motion.

After the trial court denied the motion and less than a week before the scheduled trial, Finn contacted a laboratory in Boston and was able to get specific information about the testing he sought. He filed a renewed motion for funds for expert testimony based on this new information. The trial court considered the motion on the morning that the trial was scheduled to begin and denied it.

Although this Court has recognized a due process right of an indigent defendant to funds to hire an expert to examine critical evidence, this right is not without boundaries.[4] One requirement recognized in one of our earlier cases was that the defendant's right was contingent on "a motion timely made."[5] Finn initially filed a bare bones motion devoid of any of the specific information required. When this motion was denied, Finn waited until the eve of trial to file a motion with the detailed information required. The record shows that Finn had ample time within which to investigate the possibilities of DNA testing and that he failed to act diligently until after his procedurally deficient motion was denied. Under these circumstances, we cannot conclude that the trial court erred in denying the renewed motion.

3. Finn contends that the four-year statute of limitations on burglary had expired and that he could not be tried for it. The evidence established at trial, however, demonstrates that the statute of limitations was tolled under OCGA § 17-3-2 (2).

4. Finn contends that the trial court's instruction on burglary might have misled the jury. Considered as a whole, however, the trial

[3] *Roseboro v. State*, 258 Ga. 39, 41 (365 SE2d 115) (1988).

[4] See, e.g., *Roseboro*, 258 Ga. at 41.

[5] *Sabel v. State*, 248 Ga. 10, 17 (282 SE2d 61) (1981), overruled on other grounds, *Rower v. State*, 264 Ga. 323 (443 SE2d 839) (1994).

court's instructions fairly and completely informed the jury of the elements of burglary and the manner in which Finn was alleged to have committed burglary.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 14, 2002.

*William J. Mason,* for appellant.

*J. Gray Conger, District Attorney, Mary C. Ziegenhain, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General,* for appellee.

