A04A1164. McKINNEY v. THE STATE.
(602 SE2d 904)

MIKELL, Judge.

A jury convicted Jesse Dean McKinney of two counts of child molestation, two counts of aggravated child molestation, rape, aggravated sexual battery, and cruelty to children for sexually abusing the daughter of his ex-girlfriend from July 1995 through February 2001. The jury acquitted McKinney of statutory rape and a second count of rape. The court sentenced him to 15 years in confinement and 15 years on probation. McKinney appeals the denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions and that the trial court erred in denying his motion for funds to hire an expert witness. We disagree and affirm.

---

Viewed in the light most favorable to the jury's verdict, the evidence shows that McKinney sexually molested K. W. over the course of several years, beginning when K. W. was three or four and ending when she was eight or nine. McKinney and K. W.'s mother were romantically involved and lived together from 1992 until October 2000. K. W. believed that McKinney was her father and called him "daddy."

K. W., who was ten years old at the time of trial, testified that on several occasions when she was three or four years old and living in a duplex with her mother and McKinney, McKinney removed her clothes, got on top of her and placed his "private part" inside her "private part." K. W. testified that it hurt a little. When presented with diagrams, K. W. indicated that McKinney touched her vaginal area with his penis and mouth. K. W. further testified that McKinney forced her to "suck" his private part and that "white stuff would come out" and get on her belly button. K. W. also testified that McKinney "touched [her] inside [her] hole with his hand" and put baby lotion on her vagina.

The record shows that in March 1999, the family, including K. W., her sister C. M., who was born in 1996, her mother, and McKinney, moved to a house on Cherokee Overlook. K. W. testified that on several occasions McKinney "did s-e-x" with her in the basement. After McKinney and K. W.'s mother broke up, K. W. would visit McKinney at his grandmother's house and sometimes spend the night with McKinney in his room. K. W. testified that, on more than one occasion, she had "[s]-e-x in his room" and that McKinney put his "thing" in her mouth and put his mouth on her "private parts." K. W. testified that she did not tell anyone what McKinney had done because she was afraid and "didn't even know what it was at first."

In June 2001, K. W. told her biological father that McKinney raped her: "[he] got on top of me and he — he put his thing in my hole." K. W.'s father took K. W. to her grandmother's home where K. W. told her grandmother that McKinney was having sex with her, that he would "turn her upside down and lick on her [vagina]" and that "[h]e tried to stick it in her and she peed on herself." K. W.'s grandmother told K. W. to call her mother. K. W. called her mother crying and told her that "J-e-s-s-e was having sex with [her]." K. W.'s mother further testified that K. W. asked, " 'Mommy, do you remember when you came home from the store one day . . . [t]here was a wet spot on the bed . . . [m]e and [McKinney] were doing something.' " K. W. also told her mother that "[McKinney] made her get on top of him and that she was sucking his thing while he was doing her and that he would stick his finger into her hole." K. W.'s mother contacted the authorities, and McKinney was arrested.

Amy Economopolous, a clinical child specialist supervisor who conducted a videotaped interview with K. W. immediately after the abuse was reported, testified that K. W. told her that McKinney touched her vaginal area with his mouth, hand, and penis and that K. W. touched McKinney's penis with her mouth and hands.

Dr. Terese DeGrandi, a pediatrician who examined K. W. immediately after the abuse was reported, testified that her examination of K. W. was consistent with the history that she was given. Dr. DeGrandi had been told that McKinney performed oral sex on K. W., had K. W. perform oral sex on him, had intercourse with him, and that K. W. had delayed reporting the sexual abuse. Dr. DeGrandi testified that she performed a gynecological examination on K. W., which revealed no acute trauma to the hymen. Dr. DeGrandi testified that "[K. W.'s] hymenal tissue was perfectly normal." Dr. DeGrandi explained that a delay in reporting sexual abuse affects the ability to make physical findings. According to Dr. DeGrandi, in cases of delayed disclosure, almost 90 percent of exams are normal because the area has healed or in cases of oral sex, physical trauma would not be expected. According to Dr. DeGrandi, rips or bruising of the hymen can heal within four to five days.

At trial, McKinney denied sexually abusing K. W.

1. First, McKinney argues that the trial court erred in denying his motion for funds to hire an expert witness. We disagree.

The record reflects that on August 14, 2002, McKinney filed a "38b Ex Parte Motion to Provide Funds for Expert Assistance" and a "43a Ex Parte Motion to Provide Funds for Expert Assistance," both of which were ordered sealed by the trial court. In an ex parte hearing, the trial court denied the latter motion but granted the former, ordering that Cherokee County pre-trial services pay $800 to Amy Morton, a professional therapist hired by McKinney to examine the propriety of the investigative interviews of K. W. In the 43a motion, McKinney asked for funds to hire Savannah physician Mary Jean Cardin, a pediatrician and expert in child abuse cases, to review Dr. DeGrandi's report and to explain that if K. W. had been sexually abused, she would have suffered "some type of damage." The trial court denied the motion, finding that the expert was not critical and that there was nothing "unique about this field that would require us to bring a doctor from Savannah." In particular, the trial court noted that Dr. DeGrandi's report did not prove or disprove that McKinney sexually abused K. W.

"The granting or denial of a motion for [funds to hire an] expert witness[ ] lies within the sound discretion of the trial court. Unless there has been an abuse of discretion, the trial court's ruling will be upheld." (Citation, punctuation and footnote omitted.) *Hall v. State*, 255 Ga. App. 631, 633 (3) (566 SE2d 374) (2002). "A motion for funds

to obtain an expert witness requires a reasonable showing to the court, by the defendant, why the expert's services are required, what services are to be performed by such expert, the identity of the expert, and the cost to provide the needed services." *Coalson v. State*, 251 Ga. App. 761, 766 (3) (555 SE2d 128) (2001). See also *Roseboro v. State*, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988). McKinney also must show that without the assistance of the expert, his trial "would be rendered fundamentally unfair." *Coalson*, supra.

Although McKinney's motion was in the proper format, he failed to show that without Dr. Cardin's assistance, his trial would be rendered fundamentally unfair. In support of his motion, McKinney identified Dr. Cardin as the proposed expert, her hourly rate of $125 to $150, and stated that her services were needed for trial preparation and during the guilt/innocence stage of the trial. McKinney further stated that he needed Dr. Cardin to help interpret the medical reports, which were beyond defense counsel's expertise. McKinney also included a copy of Dr. Cardin's curriculum vitae. During the ex parte hearing, McKinney's counsel specifically stated that Dr. Cardin would be brought in to counter Dr. DeGrandi's testimony. Specifically, Dr. Cardin would testify that if K. W. had sexual intercourse with an adult male as many times as alleged, there would be some physical damage. Counsel further stated that he needed Dr. Cardin to explain the following statement from Dr. DeGrandi's report: "normal physical exam — which is consistent with the patient's history of sexual abuse." The trial court explained that K. W.'s exam was normal for a sexually active adult female and found that McKinney did not need an expert from Savannah. The trial court instructed defense counsel to follow up with Dr. DeGrandi and reassert the motion if the court misunderstood the report. The motion was never reasserted.

In light of the fact that (a) Dr. DeGrandi's report was neutral on the question of whether K. W. showed signs of sexual abuse, and (b) McKinney never reasserted his motion, we cannot say that the trial court abused its discretion in finding that the expert was not critical to McKinney's defense. Moreover, McKinney has failed to show that without Dr. Cardin's assistance, his trial was rendered fundamentally unfair.

We reject McKinney's contention that his situation is similar to that of the defendant in *Thornton v. State*, 255 Ga. 434 (339 SE2d 240) (1986). In that case, our Supreme Court granted interlocutory review of the trial court's denial of the defendant's motion for funds to hire a forensic dental expert. The defendant sought to hire an expert to examine dental impression evidence. The dental impression was the sole piece of evidence linking the defendant to the murder victim and there was some question as to the reliability of such "novel" evidence. The state acknowledged that the dental impression was critical to the

prosecution of the case and the Court agreed, reversing the trial court. Id. at 435 (4). Here, by contrast, the medical evidence was not critical to the prosecution.[1] On the contrary, as the trial court recognized when it granted McKinney's motion for funds to hire Morton, the critical evidence was K. W.'s testimony. Therefore, the trial court did not abuse its discretion in denying McKinney's motion for funds to hire Dr. Cardin.

2. McKinney contends that the evidence was insufficient to support his convictions. We disagree. McKinney argues that there was no "real evidence" that he sexually abused K. W. Even though K. W. testified that the abuse began when she was three or four years old and continued for at least five years, K. W. never told anyone about the abuse, never showed physical signs of injury, and could not remember times or dates, he claims.

The evidence of the victim alone was sufficient to authorize a guilty verdict. *Spradlin v. State*, 262 Ga. App. 897, 898 (1) (587 SE2d 155) (2003). "No requirement exists that this testimony be corroborated. The jury obviously believed the victim's testimony as to the counts on which [McKinney] was found guilty. Determining the credibility of witnesses is entirely within the province of the jury." (Punctuation omitted.) Id., citing *Ferrell v. State*, 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002). See also *Dorsey v. State*, 265 Ga. App. 404, 405 (1) (593 SE2d 945) (2004); *Cobb v. State*, 254 Ga. App. 48 (1) (561 SE2d 124) (2002). The evidence in this case was more than sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 6, 2004.

Louis M. Turchiarelli, for appellant.

Garry T. Moss, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney, for appellee.

---

[1] McKinney himself acknowledges this when he states in his brief that Dr. DeGrandi testified that "even though [K. W.] may have been raped there could be a normal finding provided there was a history but she also testified that the other hypothesis would be that it never happened."