303 Ga. 474
FINAL COPY

S18A0001. WILLIAMS v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Michael Williams was found guilty of malice murder and other offenses in connection with the beating death of four-year-old Nasir Patrick.[1] On appeal, Williams contends that the trial court erred in denying

[1] On May 22, 2012, specifically in connection with the death of Nasir Patrick, Williams was indicted for malice murder, two counts of felony murder (predicated on aggravated assault and cruelty to children), aggravated assault and first degree cruelty to children. With respect to Nasir's three-year-old sister, Joy Patrick, Williams was charged with aggravated assault, aggravated battery, and first degree cruelty to children for allegedly breaking Joy's leg. Following a May 13-20, 2013 jury trial, Williams was found guilty on all charges relating to Nasir, but he was acquitted on all charges relating to Joy. On May 21, 2013, Williams was sentenced to life in prison for malice murder, and the trial court purported to merge all of the remaining counts for sentencing purposes. On May 28, 2013, Williams filed a motion for new trial, which he amended with new counsel on June 30, 2015. Following a hearing on November 12, 2015, the court denied the motion on July 20, 2016. On that same day, the court amended Williams' sentence to correctly reflect that the felony murder counts were vacated by operation of law, rather than "merged" for sentencing purposes. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On January 12, 2017, Williams filed a motion for leave to file an out-of-time appeal, which was granted on March 9, 2017, and he filed a notice of appeal on March 17, 2017. Following the payment of costs, his appeal was docketed in this Court to the

him funds to obtain a medical expert, that his trial counsel was ineffective, and that the trial court erred in striking "juror number 10" for cause. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the record shows that Williams and Yakeera Patrick were in a romantic relationship. Ms. Patrick had two children, Nasir and Joy (ages four and three, respectively). Williams occasionally babysat for Ms. Patrick when she was at work and did not have alternative childcare. In the afternoon on January 25, 2012, the children were alone with Williams while their mother was at work. Around 5:00 p.m., paramedics were dispatched to Ms. Patrick's home, where they found Nasir lying on the floor having a seizure.

When Nasir arrived at the hospital, he was treated by Dr. Brian Costello, and Nasir was unresponsive to touch, verbal, or painful stimulus. Nasir's right pupil was dilated larger than the left and unresponsive to light, which showed signs of severely increased pressure on the brain.

Nasir was transferred to Children's Healthcare of Atlanta, where he was

---

term beginning in December 2017 and submitted for decision on the briefs.

seen by Dr. Stephen Messner, a child abuse pediatrician. Nasir had a fracture at the back of his skull and swelling of the brain. Blood covered the brain, including under the brain's surface and between the two halves. The location of blood throughout the brain indicated that significant, or possibly repeated, force had been applied to the head.

Nasir died on February 6, 2012, after being taken off life support. The autopsy by the Fulton County Medical Examiner revealed that Nasir died of blunt force trauma to the head. In the medical examiner's opinion, the fracture to Nasir's skull was the result of an adult pounding Nasir's head against a hard surface, which made the injury "catastrophic," instantly rendering Nasir "nonfunctional" and "comatose." There was also evidence of two additional impacts, one to the right side of Nasir's head and one to the forehead, which caused bleeding beneath the scalp. The two additional head injuries appeared to have occurred within the same time frame as the fatal injury. Although Nasir had previously experienced febrile seizures, the medical examiner concluded that Nasir's pre-existing medical conditions did not contribute to his death.

On January 26, 2012, Williams waived his Miranda rights and gave a statement to police. He stated that Nasir had been complaining about his head

hurting for a few days. The day Williams was babysitting, Nasir was sweating through his shirt during his nap. After Nasir awoke, he ate, but then threw up. Nasir then played on the floor with his toy trucks. When Nasir stood up, he appeared dizzy, and he fell backwards onto one of his plastic toy trucks and his eyes rolled back in his head.

Nasir's younger sister, Joy, testified that Williams hurt Nasir with a belt and whipped him in the head and legs with a television remote. While Nasir was at the hospital, Ms. Patrick's cousin, Kearta Sewell, overheard Williams speaking on his phone, where he said, "I whooped him, but I didn't whoop him that much." Williams told a neighbor, Anthony Garrett, that "If that baby die, they going to give me life." When Garrett inquired as to why that would happen, Williams replied, "I ain't mean for that to happen."

The evidence was sufficient to enable a rational trier of fact to find Williams guilty of malice murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Williams contends that the trial court erred in denying him funds to obtain a medical expert. We disagree.

The decision whether to grant or deny a motion for an expert witness rests

within the sound discretion of the trial court, and that decision will be upheld on appeal absent abuse of discretion. Crawford v. State, 267 Ga. 881, 883 (2) (485 SE2d 461) (1997). In order to obtain funds for an expert witness, a motion on behalf of an indigent criminal defendant

> should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

Roseboro v. State, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988). Here, Williams made no showing to the trial court as to what the expert proposed to do regarding the evidence, or what the anticipated cost for the expert's services would be. Due to Williams' failure to provide sufficient information to the trial court to allow the court to make an informed decision about his need for assistance, we cannot say that the trial court abused its discretion in denying the motion for funds. See id. at 41 (2) (e).[2]

3. Williams also argues that his trial counsel was ineffective for failing to

---

[2] We note that this is not a case involving the procedures relating to court-appointed experts, which would be governed by OCGA § 24-7-706 of Georgia's new Evidence Code.

provide the trial court with sufficient information to allow it to grant his request for funds to hire an expert witness.

> In order to succeed on his claim of ineffective assistance, [Williams] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Assuming without deciding that trial counsel's performance was deficient for his failure to provide a sufficient basis for the trial court to grant Williams' motion for funds to hire an expert witness, Williams has failed to show prejudice. Despite Williams' expert testifying at the motion for new trial hearing that Nasir's injuries could possibly have occurred as the result of a fall, the expert ultimately agreed with the State's medical examiner that the victim most likely did not suffer the skull fracture and brain injury from falling onto a plastic truck, and that the cause of

6

the fatal injury was blunt force trauma. Accordingly, Williams' claim that the victim's brain injury was caused by a short fall onto a toy truck would have remained with almost no support — even from his own expert — had this defense expert testified at trial. Williams has failed to demonstrate a reasonable probability that the outcome of the trial would have been different had trial counsel obtained funds for his own medical expert to testify at trial. See White v. State, 293 Ga. 635 (2) (748 SE2d 888) (2013). Accordingly, his claim of ineffective assistance fails.

4. Williams contends that the trial court erred in striking "juror number 10" for cause. However, in support of this enumeration in his brief, he does not discuss anything related to "juror 10," but instead refers to a seemingly nonexistent "juror 69" who allegedly "did not like guns" and did not want to see a picture of a child's "bullet-ridden body." Williams' claim is not supported by the record, as the record does not reference any "juror 69" or a "juror 10" discussing guns or anything relating to a child's "bullet-ridden body" in this case. Accordingly, we find this claim to be unsupported and without merit. See, e.g., Maxwell v. State, 290 Ga. 574 (2) (722 SE2d 763) (2012).

Judgment affirmed. All the Justices concur.

Decided April 16, 2018.

Murder. Fulton Superior Court. Before Judge Adams.

Chaunda Brock, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.