NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 28, 2025

S25A0421.  FRENCH v. THE STATE.

BETHEL, Justice.

A jury found Timothy French guilty of malice murder and related crimes in connection with the stabbing death of Arthur James Mosley.[1] Following the denial of his motion for new trial, French appeals, arguing that the trial court erred in four respects. Because French has failed to show error, we affirm.

---

[1] The crimes occurred in January 2008. In April 2014, a Lee County grand jury indicted French for malice murder, felony murder, and armed robbery. **«V1. 18-20»** An April 2015 jury trial ended in a mistrial. French was tried again in June 2015, and the jury found him guilty of all counts. The trial court sentenced French to serve life in prison for malice murder and a concurrent life sentence for armed robbery. The felony murder count was vacated by operation of law. Thereafter, French filed a timely motion for new trial through new counsel. The transcript for the hearing on the motion for new trial indicates that French amended the motion sometime before the July 2024 hearing, but the amended motion is not part of the appellate record. The trial court entered an order denying French's motion, as amended, on August 27, 2024. French filed a timely notice of appeal from the denial of his motion for new trial, and the case was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

The evidence at trial showed that, in January 2008, Mosley, an elderly farmer, was found deceased in his home. An autopsy revealed Mosley's cause of death to be more than ten sharp-force injuries to the chest and more than twenty sharp-force injuries to the head and neck. Mosley's wallet was not found in his home. Several days later, a neighbor of French's discovered Mosley's wallet, which had been chewed and partially burned, in her yard. According to the neighbor, her dogs frequently returned home with trash from the surrounding area, and the residents of French's home had previously complained about her dogs going into their yard and getting into the trash. From the neighbor's backyard, there was a clear line of sight to French's backyard, where there was an actively smoking burn pile.

Following advancements in DNA testing between 2008 and 2013, the pants Mosley was wearing at the time of his death were tested for "contact DNA." DNA obtained from the back pocket contained a partial DNA profile consistent with French. The DNA analyst testified that the partial DNA profile would appear with a

frequency of "approximately 1 in 100,000,000 in the African-American population." As a result of the DNA testing, investigators obtained a warrant for French's arrest.

1. French first argues that the trial court erred by rejecting his *Batson* challenge to the State's peremptory strike of a black potential juror.[2] See *Batson v. Kentucky*, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986). We disagree.

A *Batson* challenge involves three steps:

> (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.

*Thomas v. State*, 309 Ga. 488, 490 (2) (847 SE2d 147) (2020) (citation and punctuation omitted). Because the trial court here went on to

---

[2] The trial court also found that the *Batson* challenge was untimely, and French complains on appeal that this finding was erroneous. However, because the trial court also rejected the *Batson* challenge on the merits, we do not address the timeliness issue. See *Coleman v. State*, 256 Ga. 77, 78 (4) (343 SE2d 695) (1986) ("[Appellant] claims the trial court erred in entertaining arguments by the State that the motion was untimely filed and eventually ruling that the motion was untimely. But since the judge also ruled correctly on the merits of the case, we need not reach issues of timeliness.").

the second step of the analysis and the State articulated its reasons for the peremptory strike, the issue of whether French has established a prima facie case under step one is moot. See *Arrington v. State*, 286 Ga. 335, 339 (9) (687 SE2d 438) (2009) ("[T]he trial court did require the State to articulate its reasons for the peremptory strikes, rendering moot the issue of whether [the appellant] had established a prima facie case.").

"At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike." *Taylor v. State*, 303 Ga. 624, 631 (3) (814 SE2d 353) (2018) (citation and punctuation omitted). Here, the prosecutor explained that he struck the prospective juror based on her employment with the Division of Family and Children Services (DFCS). The prosecutor elaborated that, during his career, he had experienced three trials ending with a hung jury, and in two of those instances, the juries "were hung essentially by DFCS workers who took . . . a hardline stance, as I understood it from other jurors." And based on that experience, the prosecutor decided that he "would never seat another person who

4

was employed, or had been substantially employed by DFCS in the history of their employment." Contrary to French's argument on appeal, the prospective juror's employment is race-neutral on its face, and we have previously held that such a reason is sufficient to satisfy the prosecutor's burden under *Batson*. See *Taylor*, 303 Ga. at 632 (3) (noting that a potential juror's employment is a race-neutral characteristic); *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995) (affirming denial of *Batson* challenge where prosecutor's reason for striking prospective juror was based on juror's employment and prosecutor's prior experience with lack of cooperation by employees of the same company and noting that "[t]he nature of a prospective juror's employment is not a characteristic that is peculiar to any race" (citation and punctuation omitted)).

Finally, at step three, "the ultimate burden of persuasion is on the opponent of a strike to prove discriminatory intent." *Coleman v. State*, 301 Ga. 720, 723, 724 (4) n.7 (804 SE2d 24) (2017). In assessing whether that burden has been carried, the trial court

5

"makes credibility determinations, evaluates the persuasiveness of the strike opponent's prima facie showing and the explanations given by the strike proponent, and examines all other circumstances that bear upon the issue of racial animosity." *Johnson v. State*, 302 Ga. 774, 779-780 (3) (b) (809 SE2d 769) (2018) (citation and punctuation omitted). "A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be disturbed unless clearly erroneous." Id. at 780 (3) (b) (citation and punctuation omitted). In arguing this issue below, French broadly implied that the prosecutor had acted with discriminatory intent in striking the prospective juror, pointing to the fact that the two jurors who voted "not guilty" at French's first trial, which ended in a mistrial, were black. French did not attempt to refute the prosecutor's previous factual experience and instead simply pointed to the prospective juror's race and argued that he did not think that working for DFCS was "a reason to strike someone." In response, the prosecutor again emphasized that he struck the prospective juror based on her employment with DFCS, noted that

he did not use a peremptory strike against any black potential jurors at French's first trial, and argued that it is not his "modus operandi" to use peremptory strikes for race-based reasons.

On this record, we see no clear error in the trial court's implicit determination that French failed to meet his burden of persuasion,[3] and French advances no argument to the contrary. Indeed, French's attempt to refute the prosecutor's explanation for the strike was far from compelling. See *Thomas*, 309 Ga. at 493 (2) (trial court's finding of no discriminatory intent not clearly erroneous where appellant "expressed doubt about the prosecutor's rationales for using peremptory strikes" but "failed to make any factual argument in support of those doubts or in support of his claim that the prosecutor acted with discriminatory intent"). See also, e.g., *Demery v. State*, 287 Ga. 805, 808 (700 SE2d 373) (2010) ("The opponent of the strike

---

[3] The trial court did not make an express finding on the third step of the *Batson* inquiry, but it heard French's argument on the issue, as well as the State's response, before denying French's *Batson* challenge. See *Coleman*, 301 Ga. at 723-724 (4) (trial court "implicitly engaged in the third step" of *Batson* by hearing arguments from the defense as to why each reason proffered by the prosecutor was inadequate and then making its own findings as to each juror).

7

may carry its burden of persuasion by showing that similarly-situated members of another race were seated on the jury." (citation and punctuation omitted)). And under the circumstances of this case, whether to credit the prosecutor's proffered race-neutral explanation, as the trial court did here, necessarily entailed an "evaluation of the prosecutor's state of mind based on demeanor and credibility"; that evaluation "lies peculiarly within a trial judge's province" and will not be disturbed on appeal. *Johnson*, 302 Ga. at 780 (3) (b) (citation and punctuation omitted). In short, the trial court's finding that the prosecutor's peremptory strike was not racially motivated was not clearly erroneous, and this claim fails.

2. In his second claim of error, French argues that the trial court erred by denying his motion for funds to retain a defense expert. Again, we disagree.

We review a trial court's ruling on a motion for an expert witness for abuse of discretion. *Williams v. State*, 303 Ga. 474, 476 (2) (813 SE2d 384) (2018). As we have explained, where an indigent defendant seeks to obtain funds for an expert witness, his motion

should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

Id. (citation and punctuation omitted).

Here, French's motion for funds indicated that he sought to retain an otherwise unidentified "independent lab qualified in forensic DNA analysis and testing" to review the test results showing that a partial profile of French's DNA was obtained from Mosley's pants. But other than these general assertions, French's motion failed to make any specific showing as to whom the expert witness might be or the anticipated costs for the expert's services. See *Finn v. State*, 274 Ga. 675, 677 (2) (558 SE2d 717) (2002) (explaining that a motion for funds to retain an expert witness must provide "specific information necessary for the trial court to fully consider [the] request" because "[w]ithout detailed information, neither the trial court, nor an appellate court, can determine whether the funds are necessary to protect the defendant's due

9

process rights"). And in light of French's failure to provide sufficiently detailed information to allow the trial court to make an informed decision about his need for assistance, we cannot say that the court abused its discretion by denying the motion for funds. See *Williams*, 303 Ga. at 476-477 (2) (affirming denial of motion for funds for expert witness that did not indicate what the expert proposed to do regarding the evidence at issue or what the anticipated cost for the expert's services would be); *Finn*, 274 Ga. at 677 (2) (affirming denial of motion for funds that "did not identify the expert [appellant] proposed to use, how that expert would examine the evidence, whether [appellant's] examination would differ in any material aspects from the State's expert and the independent expert, or the cost of the expert"); *Roseboro v. State*, 258 Ga. 39, 40-41 (3) (c) (365 SE2d 115) (1988) (affirming denial of motion for funds for expert witness where motion "made no effort to demonstrate to the trial court what type of expert was needed, nor the qualifications of this expert, nor what tests the expert would perform" and did not "identif[y] by name and qualifications a specific

expert" or "indicate[] the amount in fees that any expert likely would charge" (emphasis omitted)).

3. In his third and fourth enumerations of error, French challenges the trial court's denial of his motion for change of venue and motion for mistrial, respectively. Beyond vaguely recounting the procedural history underlying these claims, however, French neither engages in substantive argument nor cites any legal authority in support of these alleged errors. Supreme Court Rule 22 (1) states that in all briefs filed in cases other than death-penalty matters, "[a]ny enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned." And as we recently explained, "litigants must do more than just make an argument or cite authority" to comply with Rule 22. *Byrd v. State*, ___ Ga. ___, ___ (2) (913 SE2d 667) (2025). Rather, to avoid having an enumeration deemed abandoned, litigants must "ensure that argument, citation to authority, *and* citation to the record are all present" with respect to each and every error enumerated in their

11

briefs. Id. (emphasis supplied). By omitting any legal analysis or citation of authority in support of his third and fourth enumerations of error, French has failed to comply with Rule 22, and, accordingly, we conclude that he has abandoned those claims of error. See id.; *Sauder v. State*, 318 Ga. 791, 816 (7) n.21 (901 SE2d 124) (2024) ("[appellant] makes no specific argument and cites no authority to support any of these claims, so we do not address them").

    *Judgment affirmed. Peterson, CJ, Warren, PJ, and Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*