**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0022
Brandon Haywood
v.
The State

On Appeal from the Superior Court of Bibb County
No. 2016-CR-74591

Decided: May 19, 2026

BETHEL, Justice.

Brandon Haywood was convicted of malice murder in connection with the shooting death of Marcus Braswell.[1] On

---

[1] The crimes occurred on October 20, 2016. On December 20, 2016, a Bibb County grand jury indicted Haywood, Lisa Harris, and Andre Jackson for malice murder, felony murder, and aggravated assault. Jackson and Harris entered into negotiated guilty plea agreements with the State and testified against Haywood at trial. At an April 2018 jury trial, Haywood was found guilty on all counts. The trial court sentenced Haywood to serve life in prison without the possibility of parole for malice murder. The trial court purported to merge felony murder into the malice murder conviction, but the felony murder count was actually vacated by operation of law. See *Washington v. State*, 313 Ga. 771, 772–73 (2022). The trial court also purported to merge the predicate felony count of aggravated assault into the vacated felony murder count. The parties do not challenge this error, and it makes no practical difference. Accordingly, we do not address it here. See *Marshall v. State*, 309 Ga. 698, 701 (2020).

Haywood, acting pro se, filed a timely motion for new trial on May 7, 2018, which was later amended through new counsel. Following a hearing in May 2024, the trial court denied the motion, as amended, on July 2, 2025.

appeal, Haywood argues that the trial court erred by rejecting his *Batson*[2] challenge and by denying his request to charge the jury on  involuntary manslaughter. For the reasons explained below, Haywood's claims fail, so we affirm.

1. The evidence at trial showed the following. On October 20, 2016, Haywood and his co-indictees Lisa Harris and Andre Jackson  decided to rob Braswell, from whom they had purchased cocaine at his home moments before. All three approached Braswell's residence, and when Braswell opened the door, Harris stepped inside, followed by Jackson and Haywood, who was carrying Jackson's gun. Jackson, at Haywood's instruction, grabbed Braswell and forced him onto a sofa in the living room.

Haywood then forced Braswell's girlfriend into the living room and instructed her to lay face-down on the floor. The girlfriend heard one of the men say he was going to shoot Braswell in the face and then heard two gunshots. According to Jackson, Braswell attempted to grab Haywood's firearm when Haywood glanced away, and during the struggle, the gun went off. Haywood then shot Braswell a second time. An autopsy determined that Braswell died as a result of gunshot wounds to his face and chest.

2. Haywood first challenges the trial court's denial of his *Batson* motion made in response to the State's using all nine of its peremptory strikes to strike black potential jurors. Haywood's argument presents no basis for reversal.

A *Batson* challenge involves a three-step analytical process. First, "the opponent of a peremptory challenge must

---

Haywood then filed a timely notice of appeal, which was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

[2] *Batson v. Kentucky*, 476 US 79 (1986).

make a prima facie showing of racial discrimination"; second, "the proponent of the strike must then provide a race-neutral explanation for the strike"; and third, "the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent." *French v. State*, 321 Ga. 665, 666–67 (2025). The trial court here determined that Haywood made a prima facie showing of racial discrimination because the State used all of its strikes to eliminate black potential jurors. The trial court then proceeded to the second step of the *Batson* inquiry, requiring the prosecutor to offer explanations for his strikes.

At step two of the inquiry, "the proponent of the strike need only articulate a facially race-neutral reason for the strike." *French*, 321 Ga. at 667 (quotation marks omitted). As to five of the jurors, the prosecutor identified their lack of employment as one reason for striking them. And as to four of those same five jurors, the prosecutor identified their antagonistic demeanor and apparent refusal to make eye contact with the prosecutor during voir dire as an additional reason for striking them. On appeal, Haywood takes issue with these proffered reasons,[3] arguing that someone who is unemployed or fails to make eye contact could nevertheless be an impartial juror and that eye contact is too subjective to support a strike. Haywood also points to the conclusion in a scholarly publication that black Americans "make infrequent eye contact when listening" and asserts that "lack of eye contact is cultural and race[-]based" such that the prosecutor's explanation was not race neutral. But Haywood misunderstands the second step of the inquiry.

At this step, the sole issue is "the *facial* validity of the prosecutor's explanation." *Toomer v. State*, 292 Ga. 49, 54 (2012)

---

[3] Haywood makes no argument regarding the prosecutor's proffered reasons for striking the remaining four jurors, so we do not address them.

(cleaned up; emphasis added). The prosecutor could offer an explanation that was "superstitious, silly, or implausible" and nevertheless satisfy his burden of production. *Rose v. State*, 287 Ga. 238, 241 (2010). See also *Purkett v. Elem*, 514 US 765, 766 (1995) (accepting as race-neutral the explanation that a juror "had long hair" and "a mustache and a goatee type beard" and was struck because "the mustaches and the beards look suspicious" to the prosecutor). And it is well settled that a prospective juror's employment — or lack thereof — is a facially race-neutral basis for exercising a peremptory strike. See *French*, 321 Ga. at 667 ("the prospective juror's employment is race-neutral on its face, and we have previously held that such a reason is sufficient to satisfy the prosecutor's burden under *Batson*"). A juror's demeanor and lack of eye conduct are likewise facially race-neutral reasons, and Haywood's reliance on a generalized statistic about the frequency with which black Americans make eye contact during conversations does not alter that conclusion. See *Taylor v. State*, 303 Ga. 624, 632 (2018) (rejecting argument that reliance on prospective jurors' demeanor was "impermissibly based on speculation and conjuncture" and noting that "both the United States Supreme Court and this Court have squarely held that a peremptory strike based upon a juror's demeanor during voir dire may be race-neutral at *Batson* step two"); *Toomer*, 292 Ga. at 53–54 (recognizing that disinterest during voir dire, body language, and facial expressions may be race-neutral explanations for a peremptory strike).

Finally, at step three of the inquiry, "the ultimate burden of persuasion is on the opponent of the strike to prove discriminatory intent." *French*, 321 Ga. at 667 (cleaned up). We afford "great deference" to a trial court's finding on this point, which "will not be disturbed unless clearly erroneous." Id. (quotation marks omitted). In arguing this issue below, Haywood

4

noted his general disagreement with the validity of the prosecutor's proffered reasons for striking the prospective jurors. The prosecutor replied by detailing his rationale underlying his decision to strike each prospective juror. Haywood was given an opportunity to respond to the prosecutor's explanations, but again, he expressed only skepticism about the validity of those explanations and did not cite the research on which he relies on appeal. Thereafter, the trial court denied Haywood's *Batson* challenge.

Haywood has not shown that the trial court's ruling was clearly erroneous. Haywood failed to make any factual arguments below in support of his broad disagreement with the prosecutor's proffered reasons for the strikes, nor did he identify any circumstances from which the trial court could infer that the prosecutor acted with discriminatory intent in striking the prospective jurors. And he does not do so on appeal. See *Thomas v. State*, 309 Ga. 488, 490 (2020) (no clear error in trial court's finding of no discriminatory intent where appellant "expressed doubt about the prosecutor's rationales for using peremptory strikes" but "failed to make any factual argument in support of those doubts or in support of his claim that the prosecutor acted with discriminatory intent"). The trial court, after observing the challenged jurors' demeanors and responses during voir dire and the prosecutor's demeanor as he explained his reasons for exercising the peremptory strikes, decided to credit the prosecutor's explanations, and we see no basis for disturbing that decision. See *French*, 321 Ga. at 668 ("[W]hether to credit the prosecutor's proffered race-neutral explanation … necessarily entailed an evaluation of the prosecutor's state of mind based on demeanor and credibility; that evaluation lies peculiarly within a trial judge's province[.]" (cleaned up)).

5

3. In his remaining claim of error, Haywood argues that the trial court erred by denying his request to charge the jury on involuntary manslaughter as a lesser-included offense of felony murder. However, the felony murder count was vacated by operation of law, so Haywood's claim of error related to a jury instruction on the felony murder count is moot. See *Snipes v. State*, 309 Ga. 785, 790 n.4 (2020).

To the extent Haywood asserts that the trial court erred by refusing to charge the jury on involuntary manslaughter as a lesser-included offense of malice murder, for which he was convicted and sentenced,[4] he is unable to show harm. Even assuming there was slight evidence justifying an instruction on involuntary manslaughter, "a jury-instruction error is harmless when it is highly probable that the error did not contribute to the verdict." *McClain v. State*, 303 Ga. 6, 9 (2018). Here, the jury could not find Haywood guilty of involuntary manslaughter unless it found that he did not intend to kill Braswell. See OCGA § 16-5-3 ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. … A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm."). But the jury found Haywood guilty of malice murder, which means it found that he

---

[4] Haywood's bare-bones brief is unclear on this point. He specifically argues that the trial court should have charged the jury on involuntary manslaughter as a lesser-included offense of felony murder, but he also argues more generally that the trial court erred by refusing to instruct the jury on involuntary manslaughter.

did intend to kill Braswell. See OCGA § 16-5-1(a) ("A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being."). And the evidence strongly supports that finding. So it was highly likely that the jury would not have found Haywood guilty of involuntary manslaughter even if it had been instructed on that option. See *Mann v. State*, 307 Ga. 696, 700 (2020) ("The jury, by also finding appellant guilty of malice murder, made an additional specific finding that appellant intended the victim's killing. In light of these circumstances, it is highly probable that the trial court's refusal to give a charge on involuntary manslaughter did not contribute to the verdict." (cleaned up)). Accordingly, this enumeration fails.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*